OCEAN S. S. CO., Limited, v. UNITED STATES STEEL PRODUCTS CO.

(Circuit Court of Appeals, Second Circuit. January 9, 1917.)

No. 91.

1. SHIPPING ⬤145—CARRIAGE OF GOODS—RIGHT TO FREIGHT—BILL OF LADING.

Under a contract for shipment of goods freight prepaid, where the dock receipts for the goods, given when they were delivered to the ship, stated that they were accepted for shipment subject to the provisions of the line's usual bills of lading, and those bills of lading provided that the freight should be paid on delivery of bills of lading, but the goods were damaged by fire after loading, but before the delivery of the bills of lading, and before it sailed, the delivery of bills of lading, on which was stamped a statement that the goods had been received in good order, but had been damaged, and were liable for general average and special damages, was not a compliance with the requirement for the delivery of bills of lading, which was a condition precedent to the right to recover the freight.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 226, 502–505.]

2. SHIPPING ⬤106—BILLS OF LADING—DELIVERY—PREVIOUS DAMAGE TO GOODS.

The delivery by a carrier of ordinary bills of lading, reciting that the goods were received in good condition, which were dated as of the date when the goods were delivered to the ship, at which time the bill of lading was due, is not a fraud or misstatement for which the carrier would be liable to subsequent holders of the bills, though between the delivery of the goods and the actual issuance of the bills of lading the goods had been damaged by fire on the ship.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 225, 226, 414–419.]

3. SHIPPING ⬤145—BILL OF LADING—PREPAYMENT OF FREIGHT.

A bill of lading, providing that freight shall be paid by the shippers on delivery of bills of lading, and that prepaid freight is to be considered as earned on shipment of the goods and is to be retained by the shipowner, vessel or cargo lost or not lost, must be construed as a whole, and, while prepaid freight might be construed as earned on the delivery of the goods to the ship, the ship could not demand payment of the freight until it delivered or tendered the bills of lading.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 226, 502–505.]

Appeal from the District Court of the United States for the Southern District of New York.

Four separate libels by the Ocean Steamship Company, Limited, against the United States Steel Products Company. Decree for respondent in libel No. 1, and libelant appeals. Affirmed.

The following is the opinion of Smith, District Judge, in the court below:

These are all libels in personam, filed May 10, 1916, by the libelant, to recover from the respondent the freight on certain shipments by the respondent on the steamer Eurymachus from New York to Hong Kong. The respondent has appeared and answered, and the causes have been heard together upon the pleadings, with the exhibits thereto, and an agreed statement of facts. The facts in the causes are as follows:

On February 1, 1916, the respondent agreed to ship and the libelant to transport from New York to Hong Kong the articles mentioned in the libels and

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that the freight would be prepaid. No more specific agreement concerning the freight seems to have been made than that it "would be prepaid," but the respondent had previously made numerous shipments of other merchandise on libelant's line of steamers and accepted therefor the libelant's usual form of bill of lading which contained the provisions: "Freight for the said goods to be paid by the shippers in New York, on delivery of bills of lading, in cash without deduction," and "prepaid freight is to be considered as earned on shipment of the goods and is to be retained by the shipowner, vessel or cargo lost or not lost, or if there be a forced interruption or abandonment of the voyage at a port of distress or elsewhere."

On the 11th of February, 1916, the goods referred to in the fourth libel, and on the 23d of February, 1916, the goods referred to in the three first-mentioned libels, were delivered by respondent and received by libelant on the pier known as Pier 3, Bush Terminals, in Brooklyn. The method of delivery in each case was that the respondent applied for and received from the libelant an order directing its receiving clerk for the steamship Eurymachus to receive from the respondent the goods mentioned in the order. This order contained a statement that it was issued upon certain terms and conditions, which are not material in these cases, but contained the following marginal note: "Shipper must use Indra Line receipts. Send bills of lading to our offices immediately on receiving the receipt from dock." Upon receiving this order or permit, and on the same day, the respondent delivered the merchandise mentioned in the order to the receiving clerk at the dock, and thereupon received from the receiving clerk a receipt headed "Indra Line, Limited," declaring that the merchandise, giving the marks, numbers, packages, and contents, had been received in apparent good order and condition to await shipment on steamship Eurymachus. The receipt further contained a notice that the goods "are accepted for shipment subject to provisions of line's usual bill of lading and this receipt to be exchanged for such bill of lading."

About February 26, 1916, all of the merchandise referred to in the four libels, being then in the same apparent good order and condition, were stowed on board the steamship Eurymachus, but respondent was not then informed of the actual date when the merchandise was placed on board. For a long period anterior to the present controversies it had been the customary course of dealing between the parties that the libelant would furnish the respondent with blank forms of its bills of lading, and for the respondent at its convenience to fill up the blanks in these forms, and after the shipment deliver up the receiving clerk's dock's receipt to libelant, and present the bills of lading to the libelant to sign.

On the 28th of February, 1916, after the merchandise had been stowed on the steamship Eurymachus, fire broke out in her after between decks and a large quantity of water was necessarily used to extinguish the fire, which resulted in flooding the holds where this merchandise was stowed and wetting and damaging the merchandise. To preserve the steamer and all the merchandise on board salvage services were rendered by various salvors, and in connection with these salvage operations sacrifices of a general average nature were made. After the fire had been extinguished, it was found necessary to discharge much of the steamer's cargo, including the merchandise mentioned in these libels, and the merchandise mentioned in these libels was discharged and placed on pier No. 7, Bush Docks, in Brooklyn. All of this merchandise was then surveyed, and it was found that the merchandise mentioned in libels Nos. 1 and 3 had been so damaged that it was unfit for use and unmerchantable, and that the marks upon 91 bundles of the wire bundles mentioned in libel 3 had become obliterated. It was also found that the merchandise mentioned in libel No. 2 was so damaged that it would be more advisable to sell it in New York than to have it transported to destination, because it would deteriorate further in transportation, and that the marks upon 42 kegs of the nails had also become obliterated. The merchandise or steel bars mentioned in libel No. 4, although damaged, was found to be in condition to bear transportation, and had been reloaded in the steamer Eurymachus.

After the fire referred to the respondent presented to the libelant the dock receipts which had been given for all of the said merchandise, and demanded that it should sign sets of bills of lading in the usual form as theretofore used

between the parties, and as referred to in the receipt of the receiving clerk referred to as the dock receipt. Libelant refused to sign these bills of lading in that form, and insisted that it would sign no bills of lading unless the bills of lading were dated, not of the date of the dock receipts when the merchandise was actually delivered, but of a subsequent date, when the bills of lading should be actually signed, and also should contain stamped across the face of the bill of lading the following clause: "The goods described herein were laden on board the steamer Eurymachus in apparent good order and condition. Thereafter, and on February 28, 1916, fire broke out on the steamer, with the result that said goods were damaged and have become liable for general average and/$_{or}$ special charges."

The respondent declined to accept these bills of lading, and on the 22d of April, 1916, again formally tendered to the libelants the dock receipts issued for the merchandise, and also tendered the freight (to be prepaid) in full, and also, upon such tender of the receipts and freight, demanded clean bills of lading for these shipments in the usual form theretofore used between the parties, and such as would have been signed and delivered to them, had demand therefor been made on the 23d day of February when the merchandise was delivered. The libelants refused to accept the freight, and refused to deliver the bills of lading in the form demanded, but, on the contrary, in turn tendered bills of lading having the notice before referred to written and stamped across the face of the bill of lading, and demanded the payment of the freight to be prepaid under the terms of the agreement. Upon the respondent's refusal to accept the bills of lading with this notice stamped across the face, and to pay thereupon the freight to be prepaid, these libels were filed.

The parties hereto further stipulate and agree as facts in the case that the respondent had sold the merchandise mentioned in the libels on c. i. f. terms, payment to be made as follows: In libels Nos. 1 and 4 by draft, with documents attached, against a confirmed letter of credit payable in New York. In libel No. 3 by sight draft, with document attached, on a bank in London. In libel No. 2 the goods were sold in New York, to be paid for in cash in exchange for documents. Of these facts the libelant had no information anterior to the fire. New York bankers in ordinary course of business decline to accept bills of lading with special clauses noted thereon, such as were required by the libelant to be noted on the bills of lading herein, and which refer to damage to the goods shipped, and allege liability to the goods for general averages and special charges. Such bills of lading New York bankers in ordinary course of business decline to accept as proper documents to be attached to a draft against a letter of credit for the purchase price of the goods, or for discount, without an indemnity from the drawer of the draft, but will accept such bills of lading in either case with respondent's indemnity.

[1] These libels being to recover for the freight due upon the shipments according to the terms and agreement that the freight should be prepaid, the single question in the case is: Have all the conditions requisite to the requirement of prepayment of freight been met by the libelant? The original contract as agreed upon in the statement of facts between the parties was simply that the freight should be prepaid, but upon the delivery of the merchandise at the dock to the receiving clerk the respondent accepted the receipt, which stated that the merchandise was accepted for shipment subject to the provisions of the line's usual bill of lading; and the provisions of the usual bill of lading were that freights would be *paid* by the shipper on the delivery of bills of lading. The whole question, therefore, limits itself to the fact whether or not bills of lading have been tendered by the libelant in compliance with those provisions. And on this the sole question is whether or not the bills of lading which have been proven to have been actually tendered were in conformity with the contract, and whether the libelant had the right to write the notification across the face of the bill referring to matters which occurred subsequent to the delivery of the merchandise for shipment. The bill of lading became due to be delivered as soon as the merchandise was delivered within reach of the ship's tackle. In the present cases it is shown that the merchandise was actually stowed on board on the 26th of February anterior to the fire, but presumptively it was delivered within reach of the ship's tackle on the date mentioned in the dock receipt which was the 23d of February,

1916. On that day, therefore, the respondent became entitled to the bills of lading, and if it had demanded them on that day or any day subsequent thereto, prior to the 28th of February, 1916, when the fire occurred, it is admitted by the libelant that the bills of lading would have been signed in the usual form without the additional notification stamped across the face.

[2] The libelant, however, claims that the bill of lading as against them would be construed as of the date·when it was actually issued, and that, as stated by counsel for the libelant, common honesty would forbid their issuing a bill of lading at a date when they knew that the articles referred to in the bill of lading had since delivery to the ship been damaged so as to be unmerchantable, and could not in fact be transported, or rather would not in common business wisdom or prudence be transported, to their original destination; that for the libelant to issue such a bill of lading at this time would put it in the power of the respondent to commit a fraud upon an innocent banker by inducing such banker to discount his bills of exchange upon the assumption that the bills of exchange were accompanied by bills of lading, which last represented merchandise in course of transportation in like good order and condition as when it was originally delivered to the ship. This, however, is to assume that the bill of lading is an independent document, which has no connection with the dock receipt, and must be dated as of the date it is signed and handed to the shipper. On the other hand, it seems to the court that the true interpretation of the matter is that the bill of lading in this case is but a formal and amplified substitute for the dock receipt, and that they both refer to and take effect from the same date. The bill of lading should therefore be dated as of the same date as the dock receipt, as it was upon that day that the merchandise was delivered to the ship, and under the facts of this case the ship's liability began. To hold otherwise would be to hold that the shipowner might vary, himself, the conditions between the day when the merchandise was actually delivered within reach of the ship's tackle and any subsequent date at which it might suit the ship to sail. The only safe rule to adopt would be that the shipper became entitled to the bill of lading upon the date he delivered his merchandise to the ship within reach of her tackle, and that the bill of lading was presumed to be issued and dated as of that date, only lying at the ship's office, ready to be called for by the shipper.

It is difficult to see how the bill of lading issued as of that date involves any misstatement or fraud on the part of the shipowner or the ship. Had the bill of lading been delivered to the shipper on the same day as the dock receipt, the subsequent fire and the damage thereby occasioned would have left libelant in the precise position it stood upon the face of the original bill of lading, and would not have authorized any alteration upon the face of the bill of lading, which at that time might be in the hands of wholly unknown parties. Should the holder of the bill of lading to whom it was issued be guilty of any concealment or misstatement in tendering his bills of exchange to be discounted, based upon bills of lading purporting to be bills of lading of articles or merchandise shipped for transportation, but which the holder knew had since the date of the bill of lading been destroyed or rendered unfit for transportation, it might be argued that this action would be a fraud on the part of the holder of the bill of lading, who attempted to use it as security for his bill of exchange. It would not appear that the master of the ship, or the owner of the ship, who issued the bill of lading, would in any wise be responsible for the fraud or misstatement of the holder of the bill of lading. The bill of lading would represent the contract that the shipper made at the time the merchandise was delivered within reach of the ship's tackle, and the fact that since that date a contingency or peril had happened contemplated in the bill of lading, which was alleged to alter the condition of the articles shipped, it would not affect the matter. In the opinion of the court the shipper was therefore entitled to a bill of lading in such form as would under the agreement have been issued to him on the 23d of February, 1916, when the merchandise was delivered within reach of the ship's tackle, and to be dated as of that date.

[3] The next question is whether, that being the case, the libelant is entitled in these proceedings to recover his freight to be prepaid. The original con-

tract was that the freight was to be prepaid. According to the dock receipt accepted by the respondent the shipment was made subject to the provisions of the line's usual bill of lading. According to the provisions of the usual bill of lading the freight for the goods was to be paid by the shipper in New York in cash on delivery of the bill of lading. Inasmuch as proper bills of lading have not been delivered or tendered, it would follow that the libelant has not become entitled to demand payment of the freight. That result, however, is claimed by libelant to be inconsistent with the other clause of the bill of lading which provides that prepaid freight is to be considered as earned on shipment of the goods, and is to be retained by the shipowner, vessel or cargo lost or not lost. The bill of lading must be construed as a whole, and whilst prepaid freight might be construed as earned on the shipment of the goods, that is, on the delivery of the goods on the 23d of February, 1916, within reach of the ship's tackle, yet, although earned, the ship was not entitled to demand payment until it delivered or tendered the bills of lading, and if it was not entitled to demand payment the respondent was not bound to pay. If the damage to the merchandise was such as to render it incapable of transportation before the commencement of the voyage, then it might be a question whether the libelant was entitled to be paid freight at all, for the settled rule of commercial law is that freight is to be paid for the carriage of the goods. Even if paid in advance, it is to be refunded if, from any cause not attributable to the shipper, the goods are not carried, unless there is a special agreement to the contrary.

The special agreement relied upon by the libelant in this case is that the bill of lading stipulates that the freight is to be retained by the shipowner, vessel or cargo lost or not lost. But that would seem to mean that it was to be retained, once the voyage of transportation was begun, by the loosening of the vessel from her moorings, or the breaking ground in the heaving up of her anchor, so as to commence her voyage, and would not apply where freight, although actually stowed on board, was unloaded without the voyage having been commenced at all. The court, however, does not find it necessary to decide this question in this case at this time. Inasmuch as, upon construing the bill of lading as a whole, it appears upon the face of it that the vessel's right to receive the prepaid freight depended upon tender or delivery of the bill of lading to which the shipper was entitled, and the libelant in this case not having performed this condition and delivered or tendered the bill of lading to which the shipper was entitled, it is not entitled to recover the freight.

It is therefore ordered and decreed that the libels in the above-entitled cause be and the same are all hereby dismissed, with costs against the libelant.

Haight, Sandford & Smith, of New York City (Charles S. Haight, Edward Sandford, and Wharton Poor, all of New York City, of counsel), for appellant.

Kirlin, Woolsey & Hickox, of New York City (J. Parker Kirlin and Mark W. Maclay, Jr., both of New York City, of counsel), for appellee.

Before COXE, ROGERS, and HOUGH, Circuit Judges.

PER CURIAM. Decree affirmed, with costs, on opinion of Judge Smith.