## THE GRACIE D. CHAMBERS.

(Circuit Court of Appeals, Second Circuit. May 22, 1918.)

No. 223.

1. SHIPPING ⬤⇒145—CARRIAGE BY WATER—RIGHT TO FREIGHT.
 Freight is earned only upon delivery of cargo.
2. SHIPPING ⬤⇒152—REFUNDING FREIGHT.
 Unless the bill of lading contains stipulations to the contrary, freight prepaid must be returned, if for any cause the cargo is not delivered.
3. SHIPPING ⬤⇒152—BILLS OF LADING—CONSTRUCTION.
 Where a bill of lading recited: "Restraints of princes and rulers excepted." "Freight for the said goods to be prepaid in full without discount retained and irrevocably, ship and/or cargo lost or not lost" freight prepaid might be retained whenever delivery of the cargo was prevented because of a restraint of princes; the meaning being perfectly clear, despite the insertion of the conjunction between the words retained and irrevocably.
4. SHIPPING ⬤⇒152—FREIGHT—RETENTION—"RESTRAINT OF PRINCES."
 Where the United States government refused clearance papers to sailing vessels whose voyages would bring them within the submarine danger zone, a shipper who had prepaid freight on goods delivered for transportation on such a sailing vessel cannot recover the same; the act of the government amounting to a "restraint of princes" within the bill of lading, which provided for retention of freight prepaid in case delivery was prevented by such restraint.
 [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Restraints of Kings or Princes.]
5. SHIPPING ⬤⇒105—CARRIERS—FREIGHT.
 Goods delivered to a carrier by water, even before actual loading on board, are in his custody, and the maritime engagement is then begun.
 Learned Hand, District Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the International Paper Company against the schooner Gracie D. Chambers, her tackle, etc., claimed by Florence G. Payne. From a decree for libelant, claimant appeals. Reversed.

Robinson Leech, of New York City, for appellant.

Stetson, Jennings & Russell, of New York City (R. L. Von Bernuth, of New York City, and Frederic Cunningham, Jr., of Washington, D. C., of counsel), for appellee.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

WARD, Circuit Judge. September 14, 1917, the schooner Gracie D. Chambers began to load a general cargo in the port of New York, to be delivered at Bordeaux. Between September 27 and 29 the libelant Paper Company shipped 120 tons of print paper. September 28, at 4:25 p. m., the Treasury Department at Washington telegraphed the collector at the port of New York to withhold clearance of all sailing vessels, any part of whose voyages would bring them within

the danger zone. There was no official publication of this embargo, but it was put into effect, beginning September 29, by the refusal of clearances to such vessels as applied for them. Both the shippers and the shipowners had heard rumors of the embargo as early as October 1.

October 3 the schooner moved out to an anchorage at the Red Hook flats, to save wharfage charges and to await clearance. October 4 the freight was paid against delivery of the bill of lading. October 5 the master applied to the collector for clearance, which was refused. He then applied to the authorities at Washington to except this schooner from the embargo, on the ground that she had begun to load before the order was made. Refusal to allow an exception in her favor was not definitely and finally made until October 10. Subsequently the cargo was discharged and the owners refused to return the prepaid freight.

The bill of lading contained the following provisions:

"Restraints of princes and rulers excepted."
"Freight for the said goods to be prepaid in full without discount retained and irrevocably, ship and/or cargo lost or not lost."

Claimant relies on these clauses for a defense to the libel.

[1, 2] By our law freight is earned only upon delivery of cargo. The ship may have carried the cargo on a voyage of 3,000 miles, and to within 1 mile of destination; but the carrier has earned no freight, and must return any freight prepaid if he has not delivered. The parties, of course, may agree upon a different rule, and for that purpose a clause has been introduced into bills of lading and charter parties from time out of mind that prepaid freight shall not be returned "ship lost or not lost." The clause variously phrased is intended to cover all contingencies. If only the loss of the ship were contemplated, the additional words "or not lost" would be meaningless. What the parties intend is that the carrier shall keep the freight, even if he does not deliver the cargo, unless the failure to deliver be due to the carrier's fault, or to a peril not excepted in the bill of lading or charter party.

[3-5] The clause in this bill of lading is not very artistically drawn, because of the insertion of the conjunction "and" between the words "retained" and "irrevocably." Yet the meaning is perfectly clear; "retained and irrevocably, ship and/or cargo lost or not lost," means retained and irrevocably retained. In the case of The Allanwilde (D. C.) 247 Fed. 236, the words were "retained and irrevocable," but the meaning is exactly the same, to wit, that the prepayment of freight was irrevocable and was to be irrevocably retained. The marine document in each case contained an exception of the restraint of princes. The government's embargo was such a restraint, and an exception covered it exactly as it would cover perils of the sea.

It is to be remembered that goods delivered to the carrier, even before actual loading aboard, are in his custody, and that the maritime engagement is begun; the goods being bound to the ship for the freight and the ship bound to the goods for transportation in accordance with the contract. Bulkley v. Naumkeag Co., 24 How. 386,

16 L. Ed. 599; Scott v. The Ira Chaffee (D. C.) 2 Fed. 401. The money sought to be recovered in this case was paid as freight against delivery of the bill of lading, whether earned or not.

The apparently inequitable result in this case is a temptation to interfere in a contract made by parties perfectly competent to contract, and contracting in the face of the very emergency which subsequently arose. This is to be especially avoided in construing familiar and long-established provisions in commercial documents. The District Judge, in the case of The Allanwilde, supra, made an additional suggestion to the effect that the carrier was bound to transship the cargo. That, however, is a discretion which is to be properly exercised on behalf of the shipper, when he is not present or cannot be communicated with, which is not this case. It is also a privilege which the law gives the master, as representing the owner, to earn his freight if he will lose it by abandoning the voyage. The District Judge thought that if the ship had broken ground—e. g., if she had sailed a mile—the prepaid freight might be retained. Clearly it could not be retained for that reason, because under our law it is not earned until delivery of the cargo. Only the clause in the bill of lading could authorize the retention.

The case of The Tornado, 108 U. S. 342, 2 Sup. Ct. 746, 27 L. Ed. 747, is not applicable. The voyage in that case was completely frustrated by a fire which rendered the ship unseaworthy and unable to proceed within a reasonable time. The question involved was the right to transship the cargo. The carrier claimed a lien upon the cargo for his freight on the ground that he had been deprived of his right to transship it and so earn his freight. No freight was prepaid or payable, and none had been earned. The court held that the parties had contracted with reference to a particular vessel which no longer existed, and likened the case to that of Taylor v. Caldwell, 3 Best & Smith, 826, in which the owner of a music hall was excused from his contract to let it for a performance because it had been burned down. If the contract in the case of the music hall had contained a provision that the owner was to be liable, even if it burned down, the conclusion would obviously have been different. The House of Lords in the case of Coker v. Limerick S. S. Co., 34 Law Times Rep. 18, lately decided that the shipowner was entitled to recover freight payable on signing bills of lading, although the vessel and cargo were burned during the loading, and before the voyage began, but after bills of lading were signed; the English law on the subject of prepaid freight being the same without any specific contract as our law is when the contract provides that it shall be retained.

Our decision in National Steam Navigation Co. v. International Paper Co., 241 Fed. 861, 154 C. C. A. 563, requires the decree to be reversed, and what was said in Ocean S. S. Co. v. United States Steel Products Co., 239 Fed. 823, 152 C. C. A. 609, as to the retaining of prepaid freight, being concededly obiter, is not controlling.

Decree reversed.

LEARNED HAND, District Judge (dissenting). Under the American rule, prepaid freight, which is not earned till the voyage is com-

pleted, may be recovered back. Griggs v. Austin, 3 Pick. (Mass.) 20, 15 Am. Dec. 175. Hence under our law the claimants must rely wholly upon the clause in the bill of lading. It must be conceded that in England prepaid freight is now recoverable, even though the ship have never broken ground, but is burned at her pier. Coker v. Limerick S. S. Co., 34 Times Law Reports, 18. We have therefore to determine what meaning to ascribe to language which, like all that used in such documents, is scarcely more than a skeleton of the thought's body.

Much could be said for the libelant's position, had the clause merely read "retained irrevocably"; but it did not. We must take the addition as qualifying the meaning by the conditions which it introduces. The loss of the ship is one condition, and it is urged that the other includes every possible contingency in which the ship is not lost. Read verbally this may be so; yet if one in this way makes the two alternatives logically exhaustive, the result is to give no meaning whatever to the added conditions. They can, I think, hardly have been intended merely as an intensive, and, if they have any qualifying value at all, I see no other so natural as to include contingencies which should frustrate the venture after its inception. At least this, it seems to me, is the most extended meaning which it can have.

So much for mere textual consideration of the language. However, as in all such cases, the meaning of words is best gathered from the purpose that informed them, and that purpose, taken from the standpoint of a fair observer, was to meet the possible difficulties which might arise in the performance of the contract. If a ship breaks ground and is lost, or returns to her port of departure, the shipper has got nothing for his freight. From his view it is an injustice that the ship should hold prepaid freight. Yet the ship has performed part of the service, and from its view the prepayment may be taken at least in part as compensation for the service so far performed. The ship has given a part of her time; her loss is actual. There is, therefore, an entirely understandable reason why the shipper should accept the hazard of the voyage once begun. A nicer justice might, it is true, apportion the prepayment to such time as the ship had in fact lost, if the frustration was partial, but there are obvious practical difficulties in such a course.

This, however, is not the case of frustrating a voyage, but a contract, and, looked at from the time when the contract was made, it can hardly be thought that the shipper was to bear, not only the chance of the voyage, but of the contract. Because, if the contract be frustrated before loading the ship has lost nothing, and if the frustration occurred before breaking ground at most nothing beyond detention while loading and discharging. She remains available for carriage during the same period as before. If one construes the clause as justifying her retention of the prepaid freight, she is in effect given two freights for the same period. Such a conclusion can hardly be within the compass of what the shipper would have conceded or the owner demanded, had they been faced with the possibility at the outset. Therefore I think the result was not within the intention of the parties, when in one way or another some construction must be imposed upon a mere outline of

intent like this. I conclude, therefore, that the clause applies to the voyage only, and that if the voyage be frustrated in limine—that is, before ground broken—it does not entitle the owner to retain the freight.

The authorities, so far as they go, are at least not to the contrary. In The Tornado, 108 U. S. 342, 2 Sup. Ct. 746, 27 L. Ed. 747, the ship was destroyed at her pier, and the owner sued the cargo, demanding freight, because he had not been allowed to complete the voyage in another bottom. The headnote says that the freight was to be paid upon delivery, but an examination of the record does not bear out the statement. In any event the court decided that the shipper was absolved from further performance on account of the frustration of the voyage in limine. The implication at least was that, had the vessel broken ground, the result might have been different. While it is hard to see how the owner could in any case have recovered more than damages, that point was not raised, and the case seems to me an authority for the proposition that a frustration in limine puts an end altogether to the contract of affreightment. Now, I suppose no one would contend that the result would be different under the clause at bar if the ship had been burnt. If so, I cannot quite see why the owner should be allowed to keep his unearned freight, and yet under The Tornado, supra, not be allowed to sue because he was prevented from earning the freight. The Allanwilde (D. C.) 247 Fed. 236, went further than need be here, further perhaps than I should care to go. I have found no other case in point. Prepayment clauses under our law must be construed as intended for security rather than insurance to the owner. I am disposed, therefore, to look narrowly upon a clause like this, which seeks to impose upon a shipper, not only the risks of a voyage, but a gratuity for a voyage never undertaken.

I dissent.