## THE G. A. TOMLINSON.

### (District Court, W. D. New York. March 9, 1922.)

### No. 1207.

1. **Shipping ⊜133—Shipper has lien for failure to deliver at place designated.**

A shipper has a maritime lien enforceable by action in rem against the ship for failure to make "right delivery," including failure to deliver at an elevator designated in the bill of lading, though the cargo was delivered in good order at another elevator.

2. **Shipping ⊜152—Shipper held to have cause of action in rem for recovery of freight charges paid under protest to obtain delivery.**

Where a ship failed to deliver barley at the elevator designated, but delivered it at another elevator, and refused to deliver to the shipper until the freight was paid, the shipper, paying the freight under protest to diminish the damages, had a cause of action in rem for the amount paid.

In Admiralty. Libel by the Fleischmann Malting Company against the steamer G. A. Tomlinson, her engines, etc., claimed by the Pioneer Steamship Company. On exceptions to the libel. Exceptions overruled.

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Brown, Ely & Richards, of Buffalo, N. Y., for libelant.

Holding, Masten, Duncan & Leckie, of Cleveland, Ohio, for respondent.

HAZEL, District Judge. Libel in rem against the freight steamer G. A. Tomlinson, two causes of action being alleged. The first is that libelant shipped at Duluth 96,000 bushels of barley, for which bills of lading were issued by the master and owner of the steamer for delivery at the Exchange Elevator at Buffalo, but on arrival at the port the latter arbitrarily refused to make delivery at the designated place, but instead unloaded at the Great Eastern Elevator, notifying libelant that such unloading was at libelant's risk. The second cause of action is to recover freight charges paid under protest; it being substantially alleged that after the misdelivery of the barley, and while it was still in the possession and control of the master of the steamer, the delivery by the Great Eastern Elevator to libelant at his instance was refused until the freight charges were paid.

[1] Exceptions to the libel have been filed on the ground that no maritime lien is shown, and that an action in rem is not maintainable, since to create a maritime lien the ship must be personified and a breach of duty shown by the ship as such. It is argued by respondent that a breach of contract of affreightment for refusing to load or unload cargo at a specified place, though actionable in personam, is not actionable in rem, if the merchandise was delivered in a safe and sound condition. In support thereof reliance is had upon the decision of the Circuit Court of Appeals for the Second Circuit in The Saturnus, 250 Fed. 407, 162 C. C. A. 477, 3 A. L. R. 1187. There the agent of the vessel refused to allow her to take the cargo aboard at the berth designated by the shipper, who at expense and under protest lightered the cargo to another berth, where it was loaded on the steamship. The vessel was proceeded against, in rem to recover the cost of lighterage and towage. The Circuit Court of Appeals held that there was a breach of an executory contract of affreightment, but not of the charter party, and, since the vessel and cargo had not assumed any relations giving rise to mutuality of liens under the maritime law at the time of breach, there could be no lien for the resulting damage.

The facts of the Saturnus Case are essentially different from the facts here. The point emphasized in the decision written by Judge Hough, briefly stated, is that there must exist between the shipper and the personified ship obligations that distinctly spring from the union of the ship and cargo, to wit, from the loading of the goods and transportation by the ship, and, as no such relations had come into being, there was a failure of mutuality of liens as recognized by the maritime law. The decision in my view is not susceptible of the interpretation that a shipper on a bill of lading which designated a proper place for delivery had no right to a maritime lien, where the ship without proper cause made delivery at a different place. Indeed, in the later case of The Esrom (C. C. A.) 272 Fed. 266, Judge Hough, after stating in his concurring opinion that liens for mere delay do not arise from the union of ship and goods in favor of a shipper dealing with a charterer, said:

"In the absence of that contract with the owners usually evidenced by a master's bill, this libelant was entitled to look to the personified ship for proper stowage, seamanlike management, and right delivery; but he can look to charterers only for the date of sailing."

In the prevailing opinion written by Judge Manton the principle is substantially stated that reciprocal liens between the ship and cargo arise at the time the cargo is taken on board, and, though the obligations between the carrying ship and cargo are mutual, it does not attach until the cargoes are on board the ship and in custody of her master.

In The Poznan (D. C.) 276 Fed. 418, decided by Judge Learned Hand, who sat in the Saturnus Case, the libels against the charterer and owner were in personam, and in rem against the ship for pilferage and damage to cargo. He said that an action in rem could only be maintained for damage to the cargo resulting from the transportation, such as improper stowage, breakage, pilfering, or something of that nature; but the decision was not limited to such damage, for in another part of the opinion it is stated that there was a lien or privilege against the ship for "right delivery"—a term that in my opinion is not simply limited to safe and sound delivery, but one that impliedly includes right delivery at the place designated by the shipper.

Failure to comply with the bill of lading relating to the designated place of delivery is, I think, a breach arising from the act of transportation, as distinguished from a breach involving failure to transport or to accept the cargo for carriage at the place of loading. In the first-mentioned instance "the ship is bound to cargo and cargo to ship," while in the latter there is no mutuality arising from the act of carriage. Thus the decision in the Saturnus Case leads to the conclusion that no maritime lien arises against the ship for breaches of a mere executory contract to transport before there eventuates a union of ship and cargo or before the voyage is begun. However, the principle applicable to the facts here is found in The Esrom, supra. In that case Judge Manton said:

"The obligations which are created one to the other, then, are that the ship is bound not to injure the merchandise by improper stowage or rough handling, and, if she does, then there will be a liability in rem, even before the voyage is begun. If the voyage is begun, the vessel must carry the goods to destination on the terms agreed by the shipper with the charterer; for when the vessel starts upon the voyage, by implication, there is a ratification and adoption by the ship of the charterer's contract with the shipper. Then the shipper is deprived of an opportunity to retake his goods, and the goods are in the sole possession and control of the ship. So, too, the ship is then bound by the charterer's bill of lading, under which the freight is prepaid, and cannot collect further freight at destination."

Nor is it of material importance in the circumstances that the barley was without physical damage because of the breach of delivery. The Maggie Hammond, 9 Wall. 435, 19 L. Ed. 772. Delivery may be prevented by vis major, or conditions excusing delivery at a specified berth, or justifying delivery at some other berth; but we are not now dealing with such a situation.

[2] As to the exceptions to the second cause of action, the exceptions filed are to the libel as a whole, and the rule pertaining to demur-

rers and pleas, to wit, that if either cause of action is sufficient the exceptions must be overruled, is perhaps not inapplicable. But any such reason for overruling the exceptions may be passed, inasmuch as I think that the barley was still in the possession of the master and claimant, who refused to deliver possession to libelant until the freight was paid, and, as payment was made under protest to diminish the damages resulting from the refusal, a cause of action is properly alleged. Facts may be disclosed at the trial excusing libelant from payment of freight because of the refusal to deliver the barley at the designated place. The Nathaniel Hooper, Fed. Cas. No. 10,032.

It is unnecessary to determine at this time whether the allegation is distinctively one of tort for duress. The subject of the allegation arose out of the contract of affreightment in question to transport and make right delivery, and, if I am right in holding that the relations were creative of a maritime lien, it may be that the freight paid is recoverable on the theory that it was wrongfully exacted. The Allanwilde (D. C.) 247 Fed. 236; The Gracie D. Chambers, 253 Fed. 182, 165 C. C. A. 82.

My conclusion is that, for the reasons herein stated, the exceptions to the libel must be overruled.