## AMERICAN MILLS CO. v. LUCKENBACH S. S. CO.

District Court, E. D. Louisiana. May 14, 1927.

No. 17370.

**Shipping ⇐⇒105—Steamship company held liable for loss by fire of goods delivered on wharf for shipment at its request.**

Respondent. steamship company, having contracted verbally with libelant to carry a shipment of army cots from New Orleans, requested their delivery on the wharf assigned to its use by the port authorities. After some of the cots were loaded, the wharf burned, and those remaining thereon were destroyed. On their delivery on the wharf a memorandum was issued to libelant, showing their receipt. It was respondent's custom to issue a wharf receipt, providing that the goods received were subject to the terms of respondent's bills of lading to be issued in exchange therefor, but in this case it was not done and libelant had no knowledge of the custom. *Held,* that the conditions of respondent's bills of lading did not apply to the cots which remained on the wharf, but the rights of the parties were governed by the general law, and that, in the absence of proof that the loss was without its fault or negligence, respondent was liable therefor.

In Admiralty. Suit by the American Mills Company against the Luckenbach Steamship Company. Decree for libelant.

Morris B. Redmann and Merrick & Schwarz, all of New Orleans, La., for libelant.

Walter Carroll and Terriberry, Young, Rault & Carroll, all of New Orleans, La., for respondent.

BURNS, District Judge. Libelant, the American Mills Company, alleges an agreement with respondent, Luckenbach Steamship Company, which is in the business of shipping goods for hire as a common carrier by water, whereby respondent agreed to ship 2,582 cots from New Orleans to Seattle, Wash. On September 15, 1922, 1,402 of these cots had been stowed aboard the steamship Florence Luckenbach, which was docked at the Army Supply Base Wharf, when the wharf took fire and was consumed, along with 1,450 cots remaining to be stored aboard the ship. The libel is in personam, and prays for $1,087.50, representing the value of the burnt cots.

The case is submitted on an agreed statement of facts, which are as follows:

"I. The American Mills Company is a corporation organized under the laws of the state of Georgia, domiciled in the city of Atlanta, and the Luckenbach Steamship Company is a corporation organized under the laws of the state of New York, and doing business with an agent for service of process in the city of New Orleans.

"II. That on or about September 15, 1922, libelant was the owner of 2,852 cots, which it had purchased from the United States government at New Orleans, La., and which said cots were at that time in the custody of the Quartermaster Department of the United States Army at New Orleans.

"III. That libelant entered into an agreement with respondent, whereby respondent was to ship these cots from New Orleans to Camp Lewis Wireless, Seattle, Washington; respondent being in the business of carrying goods for hire on certain vessels which it owns.

"IV. That, upon verbal request from the local agent of respondent, libelant caused the quartermaster of the United States Army at New Orleans to deliver the said cots on September 15, 1922, to the wharf at New Orleans, where the said cots were placed in a space designated by the board of port commissioners for the city of New Orleans for the purpose of being loaded on a steamer belonging to respondent; that this space had been allotted to respondent for its use by said board of commissioners, and was the customary and proper place for the stowing of cargo preparatory to its being loaded aboard ship; that the cots were then counted by James F. Kearney, an agent of respondent, and a written memorandum of his count, which is attached to the libel herein and marked 'A–1,' was given to libelant at the time by the said Kearney.

"Respondent customarily issued wharf receipts covering cargo delivered for transportation, which wharf receipts were transferable for bills of lading; but of this libelant had no knowledge at the time. Respondent would, in the ordinary course, have stamped the exhibit attached to the libel and marked 'A–1' with a rubber stamp reading as per notation attached to this stipulation and marked 'B–2'; but of this rubber stamp, and its customary use, libelant had no knowledge at the time.

"V. That the steamship Florence Luckenbach, the property of respondent, docked at the wharf on September 15, 1922, between 2 and 2:30 o'clock p. m., and commenced loading the cots immediately thereafter; that after 1,402 cots had been loaded aboard the steamer a fire broke out on the wharf, at about 8:30 o'clock p. m., September 15, 1922, destroying 1,450 of the cots, which remained on the wharf; that the said fire originated and spread through no fault or neglect on the part of respondent; that the value of the cots destroyed was $1,087.50; that in the natural course of events, had this fire not occurred, these cots would have reached Seattle, Wash., on October 17, 1922; that respondent issued no bill of lading for any of the cots until after the cots on the wharf had been destroyed, when it issued its bill of lading, as per copy annexed to this stipulation and marked 'B–3.'"

A copy of the tally sheet referred to is exhibited with the libel. It is headed "Outgoing Tally Sheet," reading, in substance: "Goods shipped from Warehouse Unit No. 2 Salvage. Date 9/15/22. Shipped to Camp Lewis Wireless, Seattle, Wash. Shipper's name: N. O. Q. M. I. Depot, Salvage Division, New Orleans, La. Purchased on Circular Proposal No. 108. Checker's signature: J. A. Dimitry. Loading begun steamer Florence Luckenbach. 2852—Each—Cots—Steel—Liberty —Black—Class C—Gross weight, 114,080 lbs. Cots marked C. L. W., N. O. 9/15/22 S. S. Florence Luckenbach. Alfred Le-Blanc, Agt., per Jas. F. Kearney."

It is to be presumed from the foregoing that the suit is not brought in rem for the enforcement of a maritime lien against the ship, because the cargo was not receipted for by the master or other authorized officer on board, so as to bind the ship, but was signed for by the shore agent who received delivery on the wharf. The Tuladi (D. C.) 18 F.(2d) 627, Docket No. 16,374, decided March 28, 1927, and cases cited.

The libelant, no doubt, realized that there was no delivery to or aboard the vessel, and hence proceeded in personam directly against respondent under its general liability as a common carrier, to whom delivery was made on the wharf. That there is some confusion on the part of libelant's proctors seems apparent in the brief, from the citation of cases where liens were held to have attached to the vessel. They cite The Oregon, Fed. Cas. No. 10,553, 1 Deady, 179; Petersburg N. N. & N. Steamboat Line v. Norfolk-Virginia Peanut Co. (C. C. A.) 172 F. 321, 24 L. R. A. (N. S.) 569; Bulkley v. Naumkeag Steam Cotton Co., 24 How. 386, 16 L. Ed. 599. These cases are beside the point. In each of them the existence of a maritime lien against the vessel was in issue, because of either an actual or a constructive delivery of cargo on board.

From the stipulation of facts it appears that there was no contract subsisting on September 15, 1922, except the agreement, presumably verbal, between the libelant and the respondent's agent. On that date, upon respondent's request, the 2,852 cots were delivered from the warehouse to the wharf, in a space set apart by the port commissioners for vessels owned and operated by respondent. The cots were counted by respondent's agent, who gave libelant the written memorandum called a "tally sheet." The libelant had no knowledge of respondent's customary issuance of wharf receipts, or of its customary use of a rubber stamp on the tally sheet reading: "Date ———. Wharf Receipt. Not Negotiable. The cargo covered by this receipt is subject to the conditions of the Luckenbach Steamship Company, Inc., bill of lading, for which this is to be exchanged." The libelant had no knowledge of the number of cots laden on the Florence Luckenbach, or of the num-

ber left on the wharf and consumed by fire, until some time after the fire, on September 15, 1922.

I am of the opinion that the belated bill of lading does not govern in this case; that the carrier cannot avail itself of the clause contained therein, stipulating "that merchandise on wharf or in warehouse awaiting shipment, transhipment, or delivery to be at owner's risk of fire, etc., not happening through the fault or negligence of carriers."

The rights of the parties should be controlled by the circumstances of their relation at the time of the loss. It would seem unjust to permit a carrier, who has confessedly neglected the use of its customary formal documents, to bind a shipper who parts with the control and custody of its property in exchange for a blanket receipt therefor, upon the faith and credit inspired by the carrier's status as such. It is true that the shipper must be charged with knowledge of the usual and customary course of trade, and that it must have known that a bill of lading ordinarily would issue; but certainly this rule should not be so extended as to charge it with knowledge of the particular blank forms and rubber stamp notices customarily used by a particular carrier, or with knowledge of the peculiar stipulations against his interest used by the carrier in its bills of lading, which come to the shipper only after the cargo has been loaded. There is nothing to indicate that the shipper in this case knew, or could have known, which of the carrier's vessels was to carry the merchandise delivered on the wharf —whether it was to be loaded on one or more vessels belonging to that company.

The "outward tally sheet" did, in its receipting part, carry the name of the steamer Florence Luckenbach. This, however, would not have entitled it to claim a right to have the whole shipment go forward on that particular ship. The only agreement subsisting merely bound the carrier to ship the cots to Seattle. Under the circumstances here presented, the bill of lading can only be considered as a self-serving declaration, made by the carrier after the loss had occurred and its liability had accrued. It served to measure the rights of the parties quoad the cots actually taken on board the Florence Luckenbach. It cannot be held to apply to the cots remaining on the wharf at the time of the fire. The Bark Edwin, Fed. Cas. No. 4,300, 1 Spr. 477.

Stripped of irrelevancies, the suit is for the value of the unshipped cots lost by fire on the wharf. These were in the control and custody of the carrier, under its general liability as such. The delivery of cargo on the wharf was made on the request of respondent, who assumed the responsibility of an insurer of its safety. The burden was on the respondent, as carrier, to show that it was free from fault.

By answer the respondent alleged that "the fire originated from causes unknown at a point on the wharf several hundred feet upstream from the Florence Luckenbach, and the cargo destined for shipment thereon, the exact point of origin of the fire being unknown to respondent; that it originated at a place or places over which respondent had no control and in which it had no interest; that the said fire originated through no fault, omission, or negligence of respondent or any of its servants; that, although respondent and its servants made all possible effort to stop the fire and protect the cargo, the fire gained such rapid headway that it was impossible to stop it, and impossible to save any of the cargo on the wharf." These averments amount to a judicial confession of the duty the carrier owed in the premises. If proven, these might suffice as a defense. The only supporting evidence offered, however, to sustain them is the clause in paragraph 5 of the stipulation of facts: "That the said fire originated and spread through no fault or neglect on the part of respondent."

Certainly this isolated stipulation will not suffice to sustain the pleadings. The record is bare of any proof that the loading of the vessel had proceeded diligently, that the cots remained on the wharf subject to loss by fire or other damage through no fault of the carrier after being delivered there at its request, or that any effort was made to remove them aboard ship after discovery that the fire had commenced, or that any effort whatever was made to save the cargo left on the wharf. Under these circumstances, therefore, it seems to follow necessarily that the respondent carrier has not sustained the burden of proof.

Accordingly there will be a decree for libelant as prayed for.