EASTERN OUTFITTING CO. v. PACIFIC MAIL S. S. CO.

District Court, N. D. California, S. D. May 11, 1928.

No. 19051.

Shipping ⬨⇒142—Shipper's libel for damage to furniture in carrier's possession at pier held, barred by limitation prescribed by bill of lading subsequently issued.

Libel for damage to two carloads of furniture, during time when furniture was held by carrier on pier awaiting water shipment and before execution of bill of lading, *held*, nevertheless, barred when limitation period prescribed by bill of lading had expired, where preliminary correspondence between the parties relative to shipment did not amount to contract of carriage, but shipper merely expressed desire that both cars must arrive in order to complete order for shipment.

In Admiralty. Libel by the Eastern Outfitting Company against the Pacific Mail Steamship Company. Decree for respondent.

Glensor, Clewe & Van Dine, of San Francisco, Cal., for libelant.

William F. Humphrey, and Morgan J. Doyle, both of San Francisco, Cal., for respondent.

KERRIGAN, District Judge. This is a libel for damage to two carloads of furniture. The cars went forward from Winston-Salem, N. C., November 14, 1922, and arrived at Norfolk, Va., November 16 and 20, 1922, respectively. They were not shipped on through bill of lading. The furniture was delivered to respondent, and was then stored on the Army Base Pier at Norfolk until

loaded, 150 packages on the steamship Santa Clara December 15, 1922, and 145 packages on the steamship Point Judith January 5, 1923.

Respondent issued its bill of lading in its customary form December 16, 1922. This bill of lading provided in section 24, that notice of claim for loss or damage must be presented in writing within 60 days after notice of damage, fixed by the date of arrival of the vessel, and that action for such loss or damage must be commenced within 60 days from the presenting of such claim.

February 23, 1923, a written claim for damage to the furniture was filed. This claim was rejected. The libel was filed June 10, 1926. Respondent contends that the action is barred under the terms of the bill of lading. Libelant seeks to avoid this contention by urging that the evidence shows the damage to have occurred during the period prior to the issuance of the bill of lading, while the furniture was in possession of respondent, stored on the Army Base Pier at Norfolk; i. e., the period from November 16–20 to December 16, 1922.

Correspondence between the shipper and respondent shows that the shipper "trusted" that the two carloads of furniture would arrive at Norfolk in time for the sailing of steamship Santa Malta, due to sail November 19/20, 1922. One car did arrive prior to that date, November 16. The other arrived at Norfolk November 20, too late for the Santa Malta. Respondent had notified the shipper that both cars must arrive in order to complete the order for shipment on the Santa Malta. Respondent then stored the furniture on the Army Base Pier until it was forwarded as stated above.

On this state of the case the question is as to whether respondent was chargeable as a carrier independently of the bill of lading during the period of storage awaiting shipment, and hence liable as insurer of the goods, or whether its liability is determined by the bill of lading issued December 16, 1922, so that the statute of limitations contained therein applies to this action.

The Circuit Court of Appeals for the Fifth Circuit has had occasion to consider a similar question very recently. In Luckenbach S. S. Co. v. American Mills Co., 24 F.(2d) 704, the shipper delivered certain cots to the steamship company for shipment. While on the wharf, awaiting loading, and prior to the issuance of the bill of lading, half of the shipment was destroyed by fire. Subsequently the steamship company issued its customary bill of lading, covering the entire shipment, containing its usual stipulation against liability for loss by fire. The Circuit Court of Appeals reverses a decree awarding the shipper the value of the cots destroyed, saying:

"There was a delivery of the cots, as they were placed on the wharf at appellant's [the steamship company's] request. The memorandum was a sufficient acknowledgment of receipt to show that the cots had passed into appellant's possession, and that its liability as a common carrier had begun. But the minds of the parties had not met upon the terms of the contract of carriage. Appellee insists, as there was no agreement to the contrary, that appellant's responsibility as a common carrier was that of an insurer for any loss except such as might arise from the act of God or the public enemy; and it was so held by the District Judge. 20 F.(2d) 217.

"In our opinion, that was an erroneous view under the particular facts of this case. Appellant was required by law to issue a bill of lading, but it had the right to except liability for loss by fire. The memorandum merely acknowledged receipt of the goods; it did not purport to be a contract of carriage. Appellee is presumed to know the law, and therefore must have known that the terms and conditions on which its goods were received and would be transported would be contained in a bill of lading to be issued later. In the circumstances, it cannot be inferred that it was the intention of the parties to enter into a contract that would bind the carrier as insurer; but an implied understanding arose from common business experience that the carrier would issue such bill of lading as it was its custom to issue to shippers in the usual course of its business. The Caledonia (C. C.) [C. C. A.] 43 F. 681, 685; s. c., 157 U. S. 124, 139, 15 S. Ct. 537, 39 L. Ed. 644.

"Appellant's bill of lading was issued after the fire, but it was in accordance with its standard form, issued to all shippers alike, and was not made to fit a special case, in order to escape a liability that had already accrued. It, therefore, but evidenced the contract the parties entered into at the time the goods were delivered and accepted. In the ordinary case of a shipment of goods, it is not to be assumed, upon proof of delivery without condition, that the carrier intends to become insurer; but a shipper, in the absence of a special contract, must be presumed to deliver his goods on the terms and conditions usually and customarily imposed by the carrier in the regular course of business."

The preliminary correspondence between the parties to this action does not amount to a

contract of carriage. This, together with the circumstances of the delivery of the goods to respondent, make this statement applicable to the present case. The furniture was delivered to respondent subject to the terms and conditions of a bill of lading to be thereafter issued. On issuance of the bill of lading, the rights and liabilities of the parties were fixed thereby. Respondent is entitled to avail itself of the statute of limitations set forth in section 24 of the bill of lading, just as respondent in the case above cited was entitled to avail itself of the stipulation against liability for loss by fire.

Fully 3 years elapsed after the filing of the claim for damage before the libel was filed. The bill of lading prescribed a 60-day limitation period.

Let a decree be entered for respondent, with costs.