326

District Court, E. D. New York. April 23, 1929.

No. 7698.

Theodore L. Bailey, of New York City, for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, for respondents.

CAMPBELL, District Judge. This is a suit to recover for cargo damage, and the respondents interposed three separate defenses, viz., that the damage resulted from a cause excepted by the bill of lading, that claimant was entitled to the benefit of insurance, and that by the terms of the bill of lading the liability was limited to $100 per barrel.

There is a sharp conflict in some of the testimony, but I find the facts to be as follows:

On December 12, 1924, in the forenoon, the libelant delivered to the respondent, or his or its agent, in apparent good order and condition, at the port of Havana, Cuba, 50 barrels of tobacco in transit to Montreal, Canada.

At the time the shipper delivered the tobacco in question to the Lighterage Company, he or his agents or servants delivered to the clerk of the Lighterage Company the original and duplicate shipping permit issued by the respondent, which is in evidence, and the clerk of the Lighterage Company returned duly receipted the said original shipping permit.

Thereafter, and in the afternoon of December 12, 1924, the shipper received from the respondent a bill of lading, a copy of which is in evidence, on his or its regular form for the 50 barrels of tobacco.

About noon on December 12, 1924, it was discovered that 15 of the barrels of tobacco shipped as aforesaid and loaded in hold No. 2 on the steamship Orizaba had been damaged by oil and water, and the same were placed on the dock at Havana, and notice of damage telephoned to the office of the shipper.

Instructions having come to the office of the respondent, Juara, the manager of the export department, on December 12, 1924, between 8 and 9 o'clock p. m., called the shipper on the telephone, who sent him the bill of lading, and he put the following notation on it, "Note—15 Barrels short Shipped."

The bill of lading contained the following clause:

"21. Unless a higher value be stated herein, and declared to be the basis for freight, the value of the goods does not exceed $100.00 per package, nor $8.00 per cubic foot, and the freight has been adjusted on such valuation, notwithstanding the mention of other valuation herein for manifesting or other purposes, than as a basis for freight, and no oral declaration or agreement shall be evidence of a different valuation. In computing any liability of the Carrier in respect of the Goods, no value shall be placed thereon higher than the invoice cost not exceeding $100.00 per package nor $8.00 per cubic foot (or such other value as may be stated herein and declared to be the basis for freight), nor shall the Carrier be held liable for any damages for delay exceeding 20% of said cost not exceeding said value nor for any profits or increase of price or value over such cost not exceeding said value, nor for any special or consequential damage and the Carrier shall always have the option of replacing any lost or damaged Goods."

There was also upon the face of the bill of lading the following endorsement: "Freight to be adjusted and collected from Stern-Mendelsohn Co."

No value of the goods was stated in the bill of lading.

The bill of lading contained, among others, the following exceptions:

" * * * Sea water, wetting, rain or spray, damp * * * change of character * * * by stowage or contact with * * * leakage. * * * "

The bill of lading also contained a benefit of insurance clause.

The 15 barrels of tobacco in question were stowed in No. 2 hold.

About 12:30 p. m., December 12, 1924, water was discovered above the ceiling boards in No. 2 hold, and, after the bilges and tanks were pumped out, a hole was discovered in the top of No. 3 tank, and this constituted negligence.

No evidence was offered to show that due diligence was exercised to make the ship seaworthy. The damage was caused by water and oil, which was not one of the causes excepted by the bill of lading, and for such damage the ship is liable, as the burden is upon the carrier to bring the damage within a specific exception. Herman v. Compagnie Generale Transatlantique (C. C. A.) 242 F. 859.

No evidence was offered as to benefit of insurance clause.

Therefore the defense as to exception and benefit of insurance clause were not sustained.

It being admitted that the goods were damaged and never delivered, the sole remaining defense is that recovery cannot be had for a greater sum than $100 per barrel.

Libelant contends that the bill of lading never covered the 15 barrels in question, but that the indorsement as to short shipment was made at the time the bill of lading was delivered to shipper, and was only for 35 barrels; but with this contention I cannot agree.

Libelant also contends that the bill of lading was not delivered until after the 15 barrels had been damaged, and with this contention I agree.

We therefore have a situation where 50 barrels of tobacco were delivered and the shipping permit receipted and delivered to the shipper, entitling him on its delivery to the carrier to a bill of lading, and before the bill of lading is delivered some of the goods shipped are damaged, but the bill of lading is delivered for the whole shipment and accepted by the shipper, who some time after allows the carrier to note on the bill the short shipment of the 15 barrels, which indorsement in no way changes the agreement made by the delivery and acceptance of the bill of lading, which must be dated, and is effective as of the date of receipt of the shipment on board the ship. Ocean S. S. Co. v. United States Steel Products Co. (C. C. A.) 239 F. 823.

It is true that the shipping permit received by the shipper, which was receipted by the clerk of the Lighterage Company, was not the same in form as dock receipts given in this country, but the first note on the back thereof states that:

"No. 1—The original and duplicate of this permit must be delivered by the shipper to the employee of the Lighter Company at the docks where the cargo is received and the latter will return to him the original duly signed in order that he can obtain the respective bill of lading from the Export Department of this Agency."

It thus provided for the delivery of the bill of lading of the carrier to the shipper on the delivery of the shipping permit with receipt, and that must refer to the regular bill of lading, and not a particular one; and the respondent contends that in effect it incorporated the terms of the bill of lading in the shipping permit, as may be done in a dock receipt. Lawrence Leather Co. v. Norton, Lilly & Co. (D. C.) 15 F.(2d) 101; South Atlantic S. S. Line v. London-Savannah Naval Stores Co. (C. C. A.) 255 F. 306, The Susquehanna (D. C.) 291 F. 698; Brennan Packing Co. v. Cosmopolitan Shipping Co. (D. C.) 14 F.(2d) 971.

This may well be true, but I do not think it necessary to so find, because, in the absence of an agreement expressly incorporating the bill of lading, there is an implied understanding or agreement arising from common business experience that a carrier will issue its customary bill of lading prescribing liability, and the shipper is bound by its provisions. Luckenbach S. S. Co., Inc., v. American Mills Co. (C. C. A.) 24 F.(2d) 704; Santa-Clara-Point Judith (D. C.) 26 F.(2d) 270, 1928 A. M. C. 974; The Henry S. Grove (D. C.) 292 F. 502, 1923 A. M. C. 1021, 1024.

The law requires, and it must be presumed, that a bill of lading will be issued.

In the instant suit, however, if my finding is right, we do not have to go so far, because a bill of lading in its regular form was issued by the carrier and accepted by the shipper without the notation of short shipment, and became, as of the date of shipment, the contract of the parties, and that was not changed by the subsequent notation of short shipment.

Libelant contends that it cannot be limited to $100 per barrel, because it did not have a choice of rates, but that contention was not sustained, as the witnesses called on behalf of the claimant from the New York office were competent to testify as to rates, even though they were not in Havana at the time, for the reason that the tariffs were prepared in New York and sent to Havana, and they were familiar with them, and for the further reason that one of them was the head of a department in the New York office, in which the rates on the bills of lading issued

at Havana were checked with the tariff schedules.

In view of the decisions in The Merauke (D. C.) 26 F.(2d) 836, 1928 A. M. C. 913, and Beaumont Export & Import Co. v. N. Y. & Cuba S. S. Co. (C. C. A.) 286 F. 120, 1923 A. M. C. 205, in which last-mentioned case a similar bill of lading was in question, the bill of lading itself may show, in clause 1 thereof, which reads as follows, that such choice of rates was given:

"1. The freight is adjusted in consideration of all the terms and provisions of this contract whether written, printed, pasted or stamped."

The shipper did not declare on an ad valorem basis and have it stated in the bill of lading, and the position of the libelant was not changed by the indorsement thereon: "Freight to be adjusted and collected from Stern-Mendelsohn Co.," as the only basis for adjustment would be the bill of lading as written, and not at some higher or lower valuation of a subsequent date.

A. C. Lawrence Leather Co. v. Compagnie Générale Transatlantique (C. C. A.) 18 F. (2d) 930, is not in point, because in the instant suit there was a choice of rates available to the shipper, and the witnesses produced from the New York office of the respondent had a knowledge as to rates at the point of shipment.

The stipulation filed shows compliance with the notice clause of the bill of lading.

The objections of the libelant to the reception in evidence of the answers of the witness Juara to the thirteenth and fourteenth interrogatories, of Sixto to the fifteenth interrogatory, of Juara and Sixto to the sixteenth interrogatory, of Sixto to the seventeenth interrogatory, and of Juara to the eighteenth interrogatory, are overruled, and the objection of the libelant to the introduction of the bill of lading in evidence is also overruled, and they are received.

A decree may be entered in favor of the libelant for $1,500, with interest from December 12, 1924, with costs.