AMERICAN SMELTING & REFINING COMPANY, Plaintiff,

v.

NAVIERA ANDES PERUANA, S.A., et al., Defendants.

Civ. A. No. 38932.

United States District Court
N. D. California, S. D.
Aug. 13, 1962.

J. Bond Smith, Jr., New York City, Allan R. Moltzen, San Francisco, Cal., and Bigham, Englar, Jones & Houston, New York City, for plaintiff.

McCutchen, Doyle, Brown and Enersen, Russell A. Mackey and Bryant K. Zimmerman, San Francisco, Cal., for San Rafael Compania Naviera, S. A., Orion Shipping and Trading Co., Inc., Ocean Liberties, Inc., and Maritime Overseas Corp.

Maynard Garrison, Jr., of Wallace, Garrison, Norton & Ray, San Francisco, Cal., for Compania Financiera Peruana, S. A.

James L. Adams of Lillick, Geary, Wheat, Adams & Charles, and Alan H. Nichols of Nichols & Rogers, San Francisco, Cal., for Schirmer Stevedoring Co. Ltd.

WOLLENBERG, District Judge.

This is an action in Interpleader for a determination of the respective rights of the parties and certain monies claimed to be due from plaintiff as freights on cargoes carried for plaintiff on the OCEAN ALICE. Plaintiff-stakeholder has deposited cash in the sum of $46,652.01 with the Court and established an interpleader bond in the sum of $46,697.59. The total sum of the freight monies due is $92,016.19.

Federal jurisdiction is invoked under the Interpleader Act (28 U.S.C. §§ 1335, 1397, 2361) in view of the diversity of citizenship by the defendants and the existence of an amount in issue exceeding $500.00.

This action was commenced on July 13, 1959 in the United States District Court for the Southern District of New York. By orders dated December 2, 1959 (182 F.Supp. 897) and February 11, 1960, the case was transferred to this court.

In the latter part of 1958, plaintiff and Naviera Andes Peruana, S. A., hereinafter referred to as Navandes, entered into oral negotiations for a contract to ship plaintiff's ore from certain ports in South America to ports on the west coast of the United States, principally, Tacoma, Washington and Selby, California where plaintiff has smelting plants. After these negotiations, a written draft of the proposed contract was drawn. Certain changes were made through cables and letters and Navandes then advised plaintiff on March 18, 1959 of their confirmation of the agreement.

The pertinent parts of the contract provided that:

1) Freight was to be deemed earned at the port of loading but was not payable until notice was given to plaintiff at its New York office of the ship's mooring at the port of discharge.

2) Ninety-five percent of the amount due was to be payable to Navandes' agents in New York or any other person mutually agreed upon by the parties.

3) Five percent was to be payable when the outturn weight certificates were completed.

4) Navandes, the carrier, was responsible for loading and discharge of all cargoes.

5) A FORCE MAJEUR clause, the pertinent part of which reads as follows, provided:

" * * * strikes, lock-outs, stoppages or restraints of labor for whatever cause, whether partial or general; * * * or any other reason or any other disabling cause, without regard to the foregoing enumeration, arising without the actual fault and privity of the carrier or of the shipper or of the agents or servants of either, which may prevent the delivery for shipment and/or the loading on board the carrying vessel of the cargo always mutually excepted. This clause shall be restricted in application to events occurring prior to the delivery of the cargoes to the carrier herein and shall not apply to the carriage of the cargoes from the loading port or ports to discharging port or ports * * * "

To assume its obligations of carriage Navandes utilized vessels which it did

not own but had chartered from various parties. These vessels were the SS OCEAN ALICE (owned by defendant Ocean Liberties Inc.); the SS ARETI S. (owned by Sociedad de Navegacion, Albion, S. A.); and the SS ANDROS LEGEND (owned by defendant San Rafael Companies Naviera).

The following voyages were made by these vessels:

a) OCEAN ALICE arriving Tacoma, Washington March 17, 1959, freight paid by plaintiff in total amount of $137,-702.76.

b) ARETI S. arriving Tacoma, Washington, May 15, 1959, freight paid by plaintiff in total amount of $98,116.48.

c) ANDROS LEGEND arriving Longview, Washington May 13, 1959, freight paid by plaintiff in total amount of $23,268.03.

d) OCEAN ALICE arriving San Francisco June 5, 1959 and arriving Selby, California June 11, 1959, freights unpaid.

On March 13, 1959, plaintiff's Tacoma plant was shut down because of a strike which prevented the discharge of vessels at Tacoma. As the duration of the strike could not be predicted, plaintiff made arrangements for alternate discharge of the Tacoma cargoes. Coincidently with this, plaintiff cabled Navandes on March 26, 1959 suggesting the Force Majeur clause of the contract of afreightment include events not only at the port of loading but at the port of discharge as well. On March 30, 1959, Navandes cabled plaintiff saying, "Re contract of afreightment, we agree changes your cable 26".

As the contract required plaintiff to pay Navandes' agents in New York or any other person mutually agreed upon, Navandes desired to make other arrangements for the collection of freight monies due on each voyage on each ship for plaintiff. On the first three voyages, plaintiff paid the freights due to Financiera Peruana through the Chase Manhattan Bank of New York.

On April 6 and April 24, 1959, Navandes made attempted assignments to Financiera Peruana of the freights due on all four voyages. The assignments were executed by the president and general manager of Navandes and as to the OCEAN ALICE voyage 2, in part read as follows:

"Second: Naviera Andes Peruana S. A. hereby irrevocably assigns to Financiera Peruana S. A. and up to the sum of $82,000 the freight charges owed by American Smelting Refining & Co., New York for the transportation of mineral ores which it is to ship on the SS Ocean Alice V/2 from various Peruvian ports with destination Selby (San Francisco) California."

On April 17, Navandes wrote plaintiff substantially the same communication as it had on the three previous voyages which reads as follows:

"As for previous sailings, we are making the usual arrangements with our bankers for freight collections and we therefore irrevocably authorize you to pay to the Chase Manhattan Bank for (Financiera Peruana) the freight on (OCEAN ALICE Voyage 2)".

On April 21, plaintiff agreed to pay the freight for the benefit of Financiera Peruana. At no time did Navandes or Financiera Peruana inform plaintiff expressly of the alleged assignment.

On her second voyage, the OCEAN ALICE arrived in San Francisco Bay on June 5, 1959. By that time Navandes had gone into bankruptcy and therefore failed to provide for stevedoring services as the contract required it to do. The ship was then ordered to Selby, California and arrived there at 0530 PDT on June 11, 1959. Plaintiff hired and paid Schirmer Stevedoring Company $25,167.22 to unload the ship. Plaintiff's New York office was notified of the mooring during the morning of June 11, 1959. At that time, plaintiff had been served with process by certain defend-

ants. By June 20, these claims exceeded $400,000.00.[1]

The gross freights of the second voyage of the OCEAN ALICE were $84,929.43; $7,086.76 represents the 5% outturn weights which remained to be paid on the first three voyages. The sum of these amounts represents the amount in controversy.

On these facts the contentions of the parties are as follows:

Plaintiff contends:

1) It has a right of set off against Navandes in the amount of $49,325.07; $25,167.22 being the amount paid to Schirmer for unloading the OCEAN ALICE on June 11 at Selby, California; the balance being extra costs incurred by the three vessels because of the strike at the Tacoma plant.

2) That Navandes agreed to pay all additional costs resulting from the strike at the Tacoma plant. The sum of $42,619.12 being the difference between the $92,016.19 total freights and $49,375.07, the claimed set off, is the total owed by plaintiff to any of the parties.

3) That it is entitled to a lien on the freights of the second voyage of the OCEAN ALICE against Navandes for the extra costs incurred due to the strike and the amount paid Schirmer for discharge of that vessel.

4) It is entitled to attorney's fees incurred in asserting claims against defendant.

5) It is entitled to costs of publication.

Financiera Peruana contends:

1) That on April 6, 1959, Navandes assigned to it all freights of the first three voyages, and on April 24, 1959, Navandes assigned to it all freights of the second voyage of the OCEAN ALICE; and that it is entitled to any money owing for these freights.

2) That it has a lien on the freights of the second voyage of OCEAN ALICE, for certain money paid for the benefit of that ship between April 21 and June 3, 1959.

The owners of the OCEAN ALICE contend:

1) The OCEAN ALICE was chartered to Navandes on December 17, 1958 and a lien was granted to the owners on all sub-freights for any amounts due under the charter and this lien is entitled to first priority.

2) General damages resulted from Navandes' failure to finish the charter due to its bankruptcy.

The owners of the ANDROS LEGEND contend:

1) Damages were sustained because of Navandes' failure to finish the charter due to its bankruptcy.

2) Priority for attachments made against the OCEAN ALICE on June 8, 1959.

Schirmer contends:

1) It is the first attaching creditor by right of its attachments of June 5, 8, 11 and 18, 1959.

1. The following process was served upon plaintiff:

Writ of attachment, June 5, 1959, by Schirmer
"    "    "    June 8, 1959, "    "
"    "    "    June 11, 1959, "    "  (11:00 a. m.)
"    "    "    June 11, 1959, "    "  (11:15 a. m.)
"    "    "    June 18, 1959, "    "  (10:00 a. m.)
"    "    "    June 18, 1959, "    "  (2:00 p. m.)
Monition, June 18, 1959, by Schirmer  (10:00 a. m.)
"    June 18, 1959, "    "  (2:00 p. m.)
"    June 18, 1959, "    "  (5:00 p. m.)
"    June 22, 1959, "    Ocean Liberties
Writ of Attachment, June 8, 1959 by San Rafael Compania Naviera, S. A. (Admiralty No. 198–125)
Writ of Attachment, June 8, 1959, by San Rafael Compania Naviera, S. A. (Admiralty No. 198–126)

2) It has priority based on valid maritime liens for services performed.

3) It has priority by rights of a judgment in the United States District Court.

The issues to be decided are:

1) Did plaintiff have the right to set off its claim deductions against (a) Navandes (b) as against Financiera (c) as against the attaching libelants. (Schirmer and the attaching vessel owners).

2) Is plaintiff entitled to an award of counsel fees and costs.

3) Are the publication costs asked for by plaintiff valid.

4) Was there a valid assignment by Navandes to Financiera of its rights to the freights of the OCEAN ALICE, voyage No. 2, and if so, was it enforcible.

5) Do any claimants have a maritime lien, attachment lien, or other lien against the freights in suit.

6) What is the relative priority of parties with reference to the freights.

■ ■ Since plaintiff, as consignee, was obligated to take delivery of the cargo, any extra expense resulting from its own failure to do so would be for its own account, unless there was a valid agreement to the contrary. There is no question that plaintiff is entitled to set off the $25,167.22 paid to Schirmer for unloading the cargo of the OCEAN ALICE, voyage 2, at Selby, as Navandes had agreed to bear the expense of loading and discharge. The question of priority of this deduction will be discussed later, however.

Therefore, it becomes necessary to determine, concerning the first three voyages, whether or not the cables of March 23, 26 and 30, 1959 effectively modified the Force Majeur clause of the contract between Navandes and plaintiff to include strikes not only at the port of loading but at the port of discharge as well. In these cables, plaintiff suggested, because of the strike at its Tacoma smelting plant, that Navandes bear the extra cost incurred because unloading was impossible at Tacoma. Extra costs in the amount of $49,325.07 were incurred through service charges, dockage, custom broker wharfage and rail freight at Shaffer; for open storage and lime coating to prevent wind loss at Longview; and for stevedoring services at Selby on the second voyage of the OCEAN ALICE.

■ The first voyage of the OCEAN ALICE arrived at Tacoma on March 17 and on March 23, Navandes agreed to bear the extra expenses of unloading her at Shaffer. But Navandes had earned its freight money upon loading the OCEAN ALICE days before, even though the money due was not payable until discharge. Plaintiff had promised nothing, nor had it given anything in exchange for Navandes' new promise to bear the extra expenses. Plaintiff had a pre-existing duty to take delivery at Tacoma and bear the amount due upon delivery. It has given no new consideration for Navandes' new promise. The same theory is applicable to the sailings of the ARETI S. and the ANDROS LEGEND. These sailings had already been booked when on March 23, Navandes agreed to absorb the extra costs plaintiff required. Not only was there no consideration given for Navandes' new promise, but it was, as its wire of March 23 shows, already in financial straights. Navandes was in no position to bargain effectively against the threat of cancellation of these voyages. For these reasons, the Court finds there was not a valid modification of the contract and plaintiff is not entitled to deduct the extra expenses incurred by it because of the strike.

■ While it is well established that freights of a voyage may either be sold outright by assignment or assigned as a security for a loan, Financiera Peruana has failed in its burden to show a valid assignment has been made of the freights of the second voyage of the OCEAN ALICE.

■ The record is unclear as to exactly what the dealings were between Financiera and Navandes in general and in particular it appears no adequate con-

sideration was given for the assignment of April 24, 1959 by Financiera.

Not only does the assignment fail for lack of adequate consideration, but there is evidence that the Uniform Fraudulent Conveyance Act would directly invalidate the assignment as well. This act provides essentially that every conveyance which renders the assignor insolvent and is made without fair consideration is invalid as to the assignor's creditors. (California Civ.Code §§ 3439, 3439.04 and New York D.C.L.McKinney's Consol. Laws, c. 12, §§ 270 and 273). However, neither this question nor the question of which jurisdiction's law is applicable need be decided now.

Certain of the defendants claim part of the fund in question through liens or attachments on the second voyage of the OCEAN ALICE. Schirmer has performed stevedoring services as agreed with Navandes on the first three voyages. For these services $41,561.72 is due and owing. Schirmer filed an in personam action against Navandes and the OCEAN ALICE on June 5, 1959 and as Navandes was not in the district, served writs of foreign attachment on the freights in issue in this case on C. T. Corporation, agent for plaintiff on June 5, 8, 11 and 18, 1959.

Schirmer also filed a libel in rem against the freights of the OCEAN ALICE voyage 2 on June 18, and obtained a final judgment and decree against the freights and freight monies on deposit.

On June 8, 1959, writs of foreign attachment were served on plaintiff at its New York office on behalf of the owners of the ANDROS LEGEND and the ANDROS PATRIOT.

The owners of the OCEAN ALICE claim a Maritime lien through its contract of charter with Navandes which contains the usual lien agreements, subfreights being granted to the vessel owner for any amounts due under the charter.

Financiera claims a lien on the freights of the OCEAN ALICE, voyage 2, for monies advanced to Navandes for the use and benefit of the OCEAN ALICE (approximately $60,000 was said to be given to Navandes by Financiera for such things as fuel oil, charter hire and loading charges for both voyages).

Plaintiff claims a lien on the freights of the OCEAN ALICE, voyage 2, for the amount paid to Schirmer to unload the freights of that voyage and the extra expenses incurred by all the four voyages because of the strike at the Tacoma plant.

■ ■ The maritime liens which the stevedore claimant has asserted against the vessel's freights are non-existent. None of the stevedoring services for which Schirmer claims a lien were rendered for the voyage in issue. Moreover, the contract of charter provides that the Charterers will not allow any lien incurred by them which may have priority over the vessel owners. Under the rule of United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361 (1923) the effect of this clause was to prevent the stevedore claimants from acquiring any lien against the vessel for their services. [See also Seaboard Stevedoring Co. v. Liberian Steamship Andros Legend (W.D.Wash.1959) 1959 A.M.C. 1775]

While Section 971 of the Federal Maritime Lien Act (46 U.S.C.A. §§ 971–75) allows a stevedore a maritime lien, the Ninth Circuit feels the policy of the section is best served when a lien is permitted on only those freights that the vessel expects to earn in the particular voyage in connection with which services were rendered. Schirmer Stevedoring Co. v. Seaboard Stevedore Co. et al, 306 F.2d 188 (1962). Schirmer has been fully paid for its services performed in connection with the freights in question and is entitled to no lien against those freights for services performed for prior voyages.

■ At bar plaintiff was served with process either in rem or in personam as a garnishee and not as a party. As that is so, the first issue to be determined

as to plaintiff is how much does he owe to the respondent Navandes. Wilhelmsens Dampskibaktiesselskab, et al. v. Canadian Venezuelan Ore Co., Ltd., et al., (2nd Cir.1915), 224 F. 881. It is agreed by the parties that the total sum owing to Navandes is $92,016.19, which is the sum of the freights owed in the OCEAN ALICE voyage 2 and the 5% outturn weights due on the first three voyages. As plaintiff paid Schirmer to unload the freights in question at Selby on June 11, plaintiff is entitled as a garnishee to that set off before the creditors of the insolvent corporation can take any of the fund because under the contract with plaintiff, Navandes was to bear the costs of stevedoring services.

■ After the set off which plaintiff is entitled to, the owners of the OCEAN ALICE are entitled to first priority against the freights in issue as the charter contains the usual clause giving the owners a lien against sub-freights such as those invoked here.

■ Schirmer Stevedoring Co. served its first writ of attachment on June 5, 1959, followed by attachments on June 8 and 11. As the June 5 attachment preceded the attachments of the ship owners on June 8, Schirmer is entitled to priority over them. The two objections raised by the vessel owners as to the validity of Schirmer's attachment of June 5, are without merit. Schirmer bases its attachment upon that part of the Northern District's Admiralty Rule 1(b) which provides for service of foreign attachment "in the manner prescribed for service of process by Rule 4(d), Federal Rules of Civil Procedure". Schirmer has complied fully with Rule 4(d), 28 U.S.C.A.[2] The vessel owners argue that Rule 1(b) does not mean what it says, pointing out that under Califor-

nia law (Cal.C.C.P. § 537) this service would be invalid. There are, however, no reasons why California law should take precedence over the local Admiralty rules, especially where application in the case at bar has created no hardship or unfairness and where the notice given was fully consonant with the requirements of due process.

■ ■ The vessel owners then argue that in compliance with Admiralty Rule 2, 28 U.S.C.A., a writ of foreign attachment in admiralty may be served only if the "respondent shall not be found within the district". The return on the June 5 service did not state that Navandes could not then be found in the district; but the United States Marshal was expressly directed to seize the freights of the OCEAN ALICE only if Navandes could not be found within the district. The writ of attachment being regular on its face, it is presumed that the Marshal followed his instructions. 7 C.J.S. Attachment §§ 252, 262b. The vessel owners have not proved the contrary to be true.

The freights were earned by Navandes at the time of loading. If the attachment becomes effective when the freights are earned, Schirmer was the first attaching creditor after the freights were earned. If the attachment is effective only when the freights become payable, Schirmer was the first to attach at that time also (June 11).

■ ■ The granting of plaintiff's prayer for attorney's fees is within the discretion of the court and may properly be denied when the plaintiff has some interest in the outcome of the case. Century Insurance Co. v. First National Bank (5th Cir.1939), 102 F.2d 726. At bar there is a contest between plaintiff and the interpleaded parties not only to

---

2. Rule 4(d) (3) of the Federal Rules of Civil Procedure provides "Service shall be made as follows: Upon a * * * foreign corporation * * * by delivering a copy of the (papers to be served) to * * * any other agent authorized by appointment or by law to receive service of process * * *." Plaintiff appointed

C. T. Corporation to receive process "in the manner provided by law". Rule 4 refers to the serving of summons and complaints, but the method of serving a summons and complaint in this rule is incorporated as the same method of serving writs of garnishment under the local Admiralty Rule No. 1(b).

the amount of the fund but to the interest plaintiff may have in the fund as well. For these reasons the Court feels plaintiff is not entitled to attorney's fees.

The issue of whether or not Financiera Peruana has a lien on the freights of the OCEAN ALICE voyage 2, for money paid for fuel oil and charter hire has not been litigated and cannot be decided by this Court.

■ Plaintiff's reliance on Republic of China v. American Express (S.D. N.Y.1952) 108 F.Supp. 169 to support its prayer for costs of service by publication within Section 1655 of Title 28 U.S.C. is in error. If Section 1655 is applicable at all in this proceeding, and there is some doubt in the Court's mind whether or not it is, it would appear that A/S Krediit Pank v. Chase Manhattan Bank (S.D.N.Y.1957) 155 F.Supp. 30 is apropos. It found Section 1655 allows service by publication only where "personal service is not practicable". Mere absence from the district, even from the country is not enough to show personal service is not practical where personal service on the defendant named in the publication by plaintiff could have been easily accomplished. It could have been here as both these party defendants had agents well known to plaintiff. For that reason plaintiff's request for publication fees is denied.

A total of $92,016.19 is owed by plaintiff and for the reasons stated above, will be distributed as follows:

First, plaintiff to deduct the $25,167.22 paid to Schirmer for stevedoring services performed on the second voyage of the OCEAN ALICE;

Second, the owners of the OCEAN ALICE, Ocean Liberties, Inc. to receive $15,005.61 for monies due for port charges and the charter fee due June 20, on the OCEAN ALICE:

Third, Schirmer Stevedoring Co. to receive $41,561.72 for stevedoring services performed on the three prior voyages as first attaching creditor;

Fourth, San Rafael Compania Naviera and Orion Shipping and Trading Co.,

as owners of the ANDROS LEGEND and ANDROS PATRIOT to divide equally the remaining $10,281.64.

Financiera Peruano to receive nothing as its claims are hereby denied.

Plaintiff's claims for costs of publication and attorney's fees are hereby denied.

Each party to bear its own costs of suit.

The foregoing judgment shall be considered the fulfillment of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. and be findings of fact and conclusions of law.

Judgment is hereby entered accordingly.