410 F.2d 1006
 ORIENT MID-EAST LINES, INC., Appellant,
v.
COOPERATIVE FOR AMERICAN RELIEF EVERYWHERE, INC., et al., Appellees.
ORIENT MID-EAST LINES, INC., Appellant,
v.
SEVENTH DAY ADVENTIST WELFARE SERVICE, INC., et al., Appellees.
ORIENT MID-EAST LINES, INC., Appellant,
v.
CHURCH WORLD SERVICE, INC., et al., Appellees.
ORIENT MID-EAST LINES, INC., Appellant,
v.
LUTHERAN WORLD RELIEF, INC., et al., Appellees.
 Nos. 21833-21836.
 United States Court of Appeals District of Columbia Circuit.
 Argued December 12, 1968.
 Decided February 6, 1969.
 
 Mr. Wharton Poor, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. Stanley O. Sher, Washington, D. C., was on the brief, for appellants.
 Mr. Allen Van Emmerik, Atty., Department of Justice, with whom Asst. Atty. Gen., Edwin L. Weisl, Jr., Messrs. David G. Bress, U. S. Atty., and Alan S. Rosenthal, Atty., Department of Justice, were on the brief, for appellee, United States.
 Mr. William D. Donnelly, Washington, D. C., entered an appearance for appellee, Seventh Day Adventist Welfare Service, Inc., in No. 21,834.
 Mr. Alexander B. Hawes, Washington, D. C., entered an appearance for appellees, Cooperative for American Relief Everywhere, Inc., in No. 21,833, Church World Service, Inc., in No. 21,835 and Lutheran World Relief, Inc., in No. 21,836.
 Before BAZELON, Chief Judge, and TAMM and ROBINSON, Circuit Judges.
 TAMM, Circuit Judge:
 
 
 1
 Appellant petitions this court seeking recovery of "second freights"[1] which it alleges are owed it by the appellees under shipping contracts.[2] Briefly, appellant is a ship operator who, at times relevant to this litigation, operated two ships loaded with relief cargoes which had been donated by some of the appellees for delivery overseas.[3] In the winter months of 1964 the appellant's two ships were loaded with their cargoes at various Great Lakes ports. Both ships proceeded through the Great Lakes, arriving at the lakeward entrance to the Seaway shortly after the Seaway had closed its 1964 navigation season due to the cold weather. Unable to reach their destination, appellant's ships were forced to spend the winter at a Toronto berth (J.A. 81a, 86a). When appellant's ships could proceed no further due to the closing of the Seaway, it claimed that the voyage was terminated due to elements beyond its control and that "all freights were earned" (J.A. 50a). Further, it asked for storage fees for keeping the goods throughout the winter and, as previously mentioned, demanded second freights for the completion of the originally scheduled voyage once the Seaway was cleared. Appellant also sought and recovered freight payments (as well as interest thereon for delay in payment) which were due to it prior to the ice closure and these claims are not in issue in this litigation.
 
 
 2
 This case was tried in our district court without a jury and the trial judge issued an opinion and a supplemental opinion finding in favor of the appellees on all claims (284 F.Supp. 34 (1968)). More specifically, the district court held that appellant did not exercise "reasoned judgment" in failing to heed repeated warnings of the possibility of ice closure of the Seaway and that therefore it was not entitled to recover second freights or storage fees from the appellees (284 F. Supp. 34, at 44, 46). We affirm.
 
 
 3
 The dispositive issues in this litigation are largely factual. Appellant argues that the exculpatory clauses in the bills of lading exempt it from liability even if it was negligent in its contract performance (see note 2, supra). The district court found, however, that these clauses did not afford appellant a carte blanche in fulfilling its contract obligations in any way it pleased. To the contrary, it found that, notwithstanding the exculpatory language, appellant was contractually bound to exercise reasonable judgment and that it had not done so in this instance. The district court explicitly held that: (284 F.Supp. 34, 43)
 
 
 4
 there is a common standard of conduct prescribed if a carrier is to be afforded the protection of the exculpatory provisions. The Court finds that standard to be that to afford itself the protection of the exculpatory clauses of the bills of lading the carrier must exercise reasonable judgment under the circumstances existing and reasonably foreseeable at the time the judgment is made. In other words the exculpatory clauses do not confer a license to disregard the likely or the obvious.
 
 
 5
 We agree with the trial court's characterization of the standard of care required of appellant and we are of the view that it did not adhere to that standard.[4]
 
 
 6
 The District Court's conclusion as set out above was bottomed largely upon the fact that the Seaway had issued several warnings regarding the possibility of an early close of the Seaway. This conclusion was derived from an analysis and evaluation of all the testimony adduced during the trial. The trial judge found it significant, and we agree, that on November 2, 1964, the Seaway issued a notice (J.A. 43a-44a), as a warning to all carriers, stating that the formal closing date of the Seaway was November 30, 1964, and that "weather and ice conditions could force the Seaway to be closed earlier * * *" (J.A. 44a). In addition, on November 25, 1964, a similar notice was issued to appellant (J.A. 46a-48a). Thereafter, the Seaway Authority sent telegrams to the Shipping Federation of Canada and the Dominion Marine Association (J.A. 284a-290a) warning of a possible early closure and listing a comparison of water temperatures which reflected the fact that 1964 was running considerably colder than 1963. Finally, various witnesses testified at the trial as to the warnings issued to appellant. Among those who testified was Captain John Butt (Senior Ship Inspector of the Seaway Authority), who testified that he called appellant's general agent (Mr. Pendias) personally to warn him of the impending freeze. The trial judge evaluated all the evidence before him, including the credibility of all the witnesses who testified. We find on the basis of the trial transcript and the district court opinion that his findings are free from reversible error. Miller v. Avirom, 127 U.S.App.D.C. 367, 384 F.2d 319 (1967); Elm Corp. v. E. M. Rosenthal Jewelry Co., 82 U.S.App.D.C. 196, 161 F.2d 902 (1947). In this regard, appellant argues that the trial judge erred in his evaluation of the evidence, and especially the credibility of Captain Butt. We must point out again that it is not the function of this court to evaluate the credibility of the witnesses in determining whose version of the factual setting is correct. Johns-Manville Corp. v. Ladd, 117 U.S. App.D.C. 262, 263, 328 F.2d 563, 564 (1964); Merry Manufacturing Co. v. Burns Tool Co., 335 F.2d 239 (5th Cir. 1964). Our scope of review is delineated clearly by Rule 52(a), FED. R.Civ.P.[5] Thus, upon inspection of the entire record below we find no reversible error in the trial judge's well written opinion.
 
 
 7
 We have reviewed all of appellant's other contentions and find them without merit. Briefly, it seems clear that the Seaway Authority had no duty to advise appellant of any definite closure date and that appellant could not rely on such duty without any affirmative obligation on its part to exercise reasonable care in guiding its ships through the Seaway. The Maritime Administration's decision with respect to another ship caught in the Seaway is, of course, not binding upon us and may well be precluded under the doctrine of res inter alios acta. Finally, since we find that appellant was contractually required to but did not exercise reasoned judgment, we do not find controlling the district court's distinction between "a clause granting an exemption to the carrier from liability * * * and a situation where a carrier asserts an affirmative claim of liability against another * * *" (284 F.Supp. 34, 46). We feel that this distinction neither absolves nor indicts appellant per se; rather, it is not necessary to a finding of liability on the part of appellant. The district court's disposition of this cause of action is therefore
 
 
 8
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Compensation for delivering the cargo to its assigned destination after the ice cleared in the Seaway. Appellants sought to recover this amount in addition to the original contract price for delivery which they argue was completely earned as of the moment that they could proceed no further due to ice closure
 
 
 [2]
 The shipping contracts in this litigation consist of bills of lading. The clauses relevant here read in pertinent part:
 (5) In case of war, hostilities, * * * ice or closure by ice * * * the carrier or Master may * * * discharge the goods into depot. * * * When the goods are discharged from the ship * * * such discharge shall constitute complete delivery and performance under this contract, full bill of lading freight and charges shall be deemed earned and the carrier shall be freed from any further responsibility. * * *
 (25) It is intended that all the terms of this contract including all exemptions from liability shall be valid, enforceable and available to the carrier so far as and whenever the applicable law will permit even where there has been negligence * * * for which the carrier is chargeable * * *. (Emphasis supplied.)
 
 
 [3]
 The goods on board appellant's ships were donated for delivery overseas by the following relief agencies: Cooperative for American Relief Everywhere, Inc.; Seventh Day Aventist Welfare Service, Inc.; Lutheran World Relief, Inc.; and Church World Service, Inc. Since the United States was bound to reimburse these agencies for any judgment entered against them, it sought to and was permitted to intervene in this action under Rule 24(a) (FED.R.CIV.P.)
 
 
 [4]
 We do not agree with appellant that the relevant authority compels a different resultSee De La Rama S.S. Co. v. Ellis, 149 F.2d 61 (9th Cir. 1945); The Wildwood, 133 F.2d 765 (9th Cir. 1943).
 
 
 [5]
 FED.R.CIV.P. 52(a) provides in pertinent part:
 Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.