**RICHARD CONSTRUCTION COM-
PANY, Inc.**

v.

**MONONGAHELA AND OHIO DREDG-
ING COMPANY, Appellant.**

**No. 17361.**

United States Court of Appeals
Third Circuit.

Argued Dec. 6, 1968.

Decided March 12, 1969.

Frank E. Coho, Pittsburgh, Pa. (Robert G. MacAlister, Pittsburgh, Pa., on the brief), for appellant.

John L. Spiegel, Plowman & Spiegel, Pittsburgh, Pa. (Alfred S. Pelaez, Pittsburgh, Pa., on the brief), for appellee.

Before HASTIE, Chief Judge, and KALODNER and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from a judgment in an admiralty action in which the plaintiff, appellee, was awarded $3,997.50 and the defendant's counterclaim was denied.

Richard Construction, plaintiff, brought suit against the defendant, appellant, Dredging Company, for breach of contract to transport appellee's one-

story frame building seven miles up the Monongahela River by scow. Plaintiff had purchased the building from the Corps of Army Engineers at a public auction for $400.; a condition of that sale required the buyer to remove the building from the land on which it rested. The defendant agreed to transport the building up the river to the plaintiff's land for a consideration of $65.00 an hour.[1] Prior to June 26, 1966, the date the building was transported, it was moved to the river bank[2] and plaintiff's employees attached cable slings to the underpinning and to a lifting bar to prepare the building in order to lift it onto the scow. The defendant began to transport the building on June 26 and, because of its own negligence, was unable to lift it onto the scow with its crane.[3] It was necessary, therefore, to tow the building suspended from the crane, while it was partially submerged in the Monongahela River, to a point some 800 to 1000 feet distant from the agreed upon destination.[4] Towing the building through the river caused damage which would require $3500. to repair.[5] Since the building was not placed at the exact location desired, plaintiff had to expend $497.50 to have it removed to the originally agreed upon site. Undisputed expert testimony disclosed that the building, as relocated on the plaintiff's land, had a fair market value of $8,000. and the court found that the fair market value of the building as relocated on plaintiff's land, plus costs of transportation, were in excess of cost of repairs and costs of moving to the agreed upon location.

The District Court held that the plaintiff suffered recoverable damages in the amount of $3997.50, representing $3500. as the cost of repairing the building and $497.50 as the cost of moving it to the agreed destination. The court denied defendant's counterclaim for freight because it failed to properly perform its contract by delivery to the prescribed destination.

Defendant contends (1) that it was error to allow the plaintiff to recover more than the cost of its building at the time of shipment, plus out-of-pocket expenses; (2) that it was error to allow the plaintiff to recover the estimated costs of repair when it made the repairs itself at a lower cost; and (3) that the plaintiff has been unjustly enriched because it has

1. The District Court found that the plaintiff accepted defendant's offer to transport the building for $65.00 an hour and there was evidence to support such finding.

2. Plaintiff hired a contractor to construct the underpinning and move the building to the river bank.

3. The court's opinion, containing findings of fact and conclusions of law, included this paragraph:
 "The court finds that the defendant by its vice-president, Locke, was negligent in failing to provide equipment of sufficient capacity to safely lift the building from the bank onto the scow; in failing to properly rig the equipment to increase its capacity so as to insure the safe lifting of the building; in failing to test the ability of its equipment to lift the building and ascertain that it was level in suspension prior to snagging it on the edge of the bank. It seems that installation of a four-part line would have insured that the crane could have lifted the building. The defendant was negligent in not furnishing equipment with sufficient capacity to transport a 25-ton building safely to the agreed point of destination. Such negligent breach of the contract to transport on the part of the defendant was the proximate cause of the plaintiff's damages."

4. When it was learned that the crane could not lift the building, the parties agreed that defendant should transport the building several hundred feet up river to a low bank where it was thought the structure could be beached and leveled. That plan was prevented by overhead high voltage wires under which the crane could not be moved and hence the building had to be towed through the river for the seven-mile trip.

5. While estimated, the undisputed cost of repair was $3500. Damage was caused to the ceiling, walls, floor, joists, roof, door, jambs, windows, and exterior siding; the toilet facilities had to be reset, and the heating and electrical equipment had to be cleaned.

not been required to pay defendant's charges for moving the building.

 The District Court did not err in awarding the plaintiff damages exceeding the cost of the building plus out-of-pocket expenses. The cost of the building is not a primary consideration under the peculiar facts here since it does not accurately reflect the fair market value [6] because a condition of the public sale at which plaintiff bought the building required the purchaser to remove it at his own expense. Such a condition acts as a depressant of the sales price. Both parties agree that the correct measure of damages is the cost of placing the plaintiff in the position he would have occupied absent a breach by the defendant. Restatement of Contracts, § 329. Absent the breach by defendant, the plaintiff would have had a building worth approximately $8,000. on its chosen site. In order to restore the building to its condition before the breach, plaintiff must expend $3500. for repairs. That amount, plus the $497.50 expended to move the building from the place it was left by defendant to the previously chosen site, are the damages which naturally and reasonably flowed from the defendant's breach and "the party injured is entitled to those damages which the other party could or should foresee, as damages which would probably ensue from the particular breach." The Dimitrios Chandris, 43 F.Supp. 829, 832 (E.D.Pa.1942). Restatement of Contracts, § 330. Since the total damages awarded ($3997.50) do not exceed the fair market value of the building, the defendant has no basis for complaint.

 Defendant's contention that the District Court erred in allowing recovery for estimated costs of repairs is without merit. There might be some basis for this contention if the building had been restored to its original condition. However, at the time of trial, the plaintiff had only made certain temporary repairs in an effort to prevent further damage from the elements and those repairs were not sufficient to make the building habitable, let alone restore it to its former condition. The District Court properly applied the rule that damages may be proven by expert testimony even though the repairs have not been made. The B. F. Guinan, 40 F.2d 227 (E.D. N.Y.1930); United States v. Shipowners & Merchants Tugboat Co., 103 F. Supp. 152 (N.D.Cal.1952).

 We agree with the defendant's contention that the plaintiff has been unjustly enriched by the denial of defendant's freight. The rule announced in The Gracie D. Chambers, 253 F. 182 (2nd Cir. 1918), that " * * * freight is earned only upon delivery of cargo. The ship may have carried cargo for a voyage of 3,000 miles and to within one mile of destination; but the carrier has earned no freight * * *." is inapplicable to the situation presented by this record. Two factors distinguish this case from *Gracie Chambers*. First, the contract was not deliberately abandoned in this case; the damages were caused by a negligent breach and, in such a situation, the defendant is entitled to the value of his work less damages caused by his default. See Harris v. Cecil N. Bean, 197 F.2d 919 (2nd Cir. 1952). Second, the plaintiff wanted the building carried to its property in spite of the "dunking" it had suffered, and voluntarily accepted it some 800 to 1000 feet short of its destination. In such a case, at least a fair or pro rata proportion of the freight is due. Hurtin v. Union Insurance Co., Fed.Cas.No. 6,942 (C.C.A.Pa.1806); The Louise, 58 F.Supp. 445 (Md.1945). In computing the freight due, the trial judge found that not more than ten hours would have been required to transport the cargo if the difficulties resulting from defendant's breach had not been encountered. Further, the charge of $650.00 (10 x $65. per hour—see footnote 1 above) should be reduced by 2.7% of this sum. In the instant case, the total voyage was approximately 37,000 feet (7 miles), and

---

6. Cf. Rhoades, Incorporated v. United Airlines, Inc., 224 F.Supp. 341 (W.D.Pa.1963).

97.3% (36,000 feet) of that distance was traversed in delivering the building to plaintiff's land. If $650.00 is reduced by 2.7%, or $17.55, defendant is entitled to $632.45 on its counterclaim, which will be set off against the damages in the amount of $3,997.50 due the plaintiff.

The April 3, 1968, judgment of the District Court shall be modified to award the defendant $632.45 on its counterclaim and to provide that each party shall bear its own costs, so that plaintiff's net recovery will be $3,365.05, with interest from April 3, 1968.